# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| LANCE HENSLEY, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV409-188 |
| | ) | CR407-419 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Lance Hensley moves over the government's opposition for 28 U.S.C. § 2255 relief. (Docs. 2 & 3.[1]) On March 5, 2008, Hensley pleaded guilty to a one-count information charging him with possession of child pornography. (Cr. docs. 1, 4, & 15.) The sentencing judge imposed 80 months' imprisonment, which was affirmed on appeal. (Cr. docs. 14, 16, & 25.) Thereafter, Hensley filed the present § 2255 motion, asserting a single ground for relief: Richard Darden, his trial counsel, provided ineffective

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV409-188. "Cr. doc." refers to documents filed under his criminal case, CR407-419.

assistance of counsel at sentencing. (Doc. 2 at 5.) He contends that he is entitled to resentencing. (Doc. 3 at 5.)

In addressing such claims, the Court is guided by *Strickland v. Washington*, 466 U.S. 668 (1984), which created a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be

considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983). Hence, in the sentencing context, a movant must show a reasonable probability that the result of the sentencing proceeding would have been different. *Lawhorn v. Allen*, 519 F.3d 1272, 1296 (11th Cir. 2008).

Here, Hensley's burst of ineffectiveness allegations against Darden essentially raise only two arguments. First, Darden was ineffective for failing to file or argue any objections to the Presentence Investigation Report ("PSI") and for failing to review the PSI with him. (Doc. 3 at 6-13.)

Second, Darden was ineffective for failing to properly argue for a reduced sentence. (*Id.* at 13-20.)

Nested within the first argument, movant raises multiple instances of alleged deficient performance. Darden allegedly failed to file or argue any objections to the PSI despite promising Hensley he would do so. (*Id.* at 6.) Darden also failed to conduct any investigation regarding the sentencing enhancements recommended in the PSI, failed to review the PSI with Hensley, failed to provide Hensley with a copy of the PSI, erroneously stated that the number of images or videos discovered on Hensley's computer would have no impact on his sentence, erroneously stated that Hensley would receive no imprisonment or a short term of imprisonment, erroneously advised Hensley that he could only read a prepared statement at sentencing, failed to inform Hensley that the government had filed a sentencing memorandum, failed to respond to the sentencing memorandum, and failed to attend Hensley's meeting with his probation officer.[2] (*Id.* at 9, 11-12.)

---

[2] In addition, Hensley argues that Darden erroneously advised him that the amount of child pornography on his computer would have no impact on his *plea*, erroneously advised him (presumably pre-plea) that he would receive a sentence of either no or minimal imprisonment, and failed to file or discuss pretrial motions, including

4

Even crediting Hensley's allegations of deficient performance,³ his prejudice showing fails, so his ineffectiveness claim fails. *See, e.g., Holladay*

---

motions to suppress. (Doc. 3 at 12.) (He also suggests that Darden was ineffective for failing to move for discovery, but the government provided him with open file discovery. (Cr. doc. 20 at 24.).) He has not offered any basis for the filing a motion to suppress. Moreover, Hensley has rather blatantly attempted to back-door pre-plea issues into the sentencing calculus. Those issues are irrelevant to the sentencing ineffectiveness inquiry -- they go to the validity of the plea itself, not to sentencing. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Since the underlying issues were waived by the plea, the only conceivable claim Hensley could raise based upon pre-plea deficient advice is that the plea itself cannot be trusted based upon counsel's deficient performance. *Tollett*, 411 U.S. at 267. Hensley, however, is not raising such a claim -- he asks for resentencing only, not a reversal of the conviction. (Doc. 10 at 7.)

³ Some of Hensley's allegations, however, do not support such an inference. For instance, Darden was prohibited under Local Criminal Rule 32.2 from providing Hensley with a copy of the PSI, and Hensley admits that Darden allowed him to review it in his office. (Doc. 3 at 25 (Hensley Aff.).) Also, Darden's absence from the presentencing interview was not deficient performance, since the Sixth Amendment right to counsel does not apply to presentencing interviews by the Court's probation office. *Okonkwo v. United States*, 2010 WL 1254333 at *10 (M.D. Ala. Mar. 5, 2010) (citing *United States v. Simpson*, 904 F.2d 607, 611 (11th Cir. 1990), which declined to address the issue but noted that three circuits have rejected it); *Williams v. United States*, 2009 WL 2486914 at *1 n.1 (S.D. Ga. Aug. 10, 2009) (collecting cases from the Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits declining to recognize a right to counsel at a presentence interview and stating that the "vast majority of other circuits to hear th[e] issue found no violation of the right to counsel where a probation office conducts a presentence interview outside the presences of counsel, especially if the probation office has taken no action to exclude counsel."). His claim that Darden indicated that he faced a short term of imprisonment or no imprisonment term at all is highly dubious. Hensley admits in his affidavit that he reviewed the PSI with Darden prior to sentencing, and the PSI contained the recommended sentencing range. (PSI at 12 ¶ 47; doc. 3 at 27 ¶¶ 11-12 (Hensley Aff.).) Finally, his assertion that Darden failed to respond to the government's sentencing memorandum is contrary to the record. In the memorandum, the government simply included a victim impact statement. (Cr. doc. 13.) While Darden did not file a formal written response, he objected to its admission at sentencing. (Cr. doc. 21 at 3-7.) The sentencing judge adjourned the proceeding so that Darden could confer with government counsel, and then he withdrew the objection. (*Id.* at 8.)

*v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa."). Hensley first raises generalized prejudice arguments, contending that since Darden performed deficiently, he must have been prejudiced. Such insupported assertions do not merit § 2255 relief, much less a hearing on the matter. *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)); *see also Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations). Next, Hensley argues that had Darden properly investigated and objected to the PSI, he would have avoided a five-level sentencing enhancement under U.S.S.G. § 2G2.2(b)(7)(D). (Doc. 3 at 13.) For instance, had Darden consulted a computer expert, he might have been able to show that Hensley only accessed a small number of the images and that the

website had simply dumped the mass majority of the images onto his computer. (*Id.* at 12.) He asserts that his sentencing range would have been substantially lower had he received a lower enhancement. (*Id.* at 13.) "Even if [his] sentence had only been increased by two (2) levels pursuant to § 2G2.2(b)(7)[(A)], his recommended sentencing range would have been less than the sentence imposed by the Court." (*Id.*) Hensley, however, offers only speculation as to any possible expert testimony, and he has not stated exactly how many of the images and videos he *did* access.

Hensley was subjected to the highest possible sentencing enhancement under the guidelines. According to the PSI,

> defendant possessed at least 321 images and 180 video clips of child pornography. Pursuant to U.S.S.G. § 2G2.2, Application Note 4, a video clip shall be considered to have seventy-five images. Therefore, the defendant is accountable for a total of 13,821 images in the instant offense. Since the instant offense involved 600 or more images, the offense level is increased by five levels. U.S.S.G. § 2G2.2(b)(7)(D).

(PSI at 5 ¶ 17; cr. doc. 21 at 9 (sentencing tr.).) Hensley's assertion that he should have received a lower enhancement is unsupported. It is especially telling, and entirely unsurprising, that he provides no numbers or figures

from his own memory in support of his argument.[4] Disregarding the *images* downloaded to his computer, if Hensley accessed even eight of the 180 *videos* on his hard drive, he was subject to the maximum possible five-level enhancement, which applies when 600 or more images were involved in the offense. As noted by the Court's Probation Office, each video clip is considered to include 75 images. U.S.S.G. § 2G2.2, Application Note 4; *United States v. Hensley*, 322 F. App'x 776, 777 n.2 (11th Cir. 2009) ("Under the sentencing guidelines, videos are counted as 75 images for the purpose of determining the appropriate enhancement level."). Had he accessed only four video clips, equivalent to 300 still images, he still would be subject to a four-level enhancement, which would place him within the 70-87 month recommended range. The sentencing judge sentenced Hensley to 80 months' imprisonment, finding "no reason to depart from the guidelines" range after considering all of the sentencing "factors set forth in 18 U.S.C. § 3553." (Cr. doc. 21 at 25-26.) Hensley simply has not shown a reasonable probability that that sentence would have changed had Darden performed

---

[4] Hensley simply states in his affidavit, that he had "did not sit there and download each and every image and video and that [he] was unaware of a lot of the content." (Doc. 3 at 25 (Hensley Aff.).) Too, Darden actually argued at sentencing that the number of images was deceptively large. (Cr. doc. 21 at 22-23.)

as he now desires. *See Smith v. Spisak*, ___ U.S. ___, 130 S. Ct. 676, 687-88 (2010) (even assuming that an attorney performed deficiently at sentencing, there is no prejudice if the outcome of the proceeding was not reasonably likely to have changed).

Turning to his second major argument, Hensley claims that Darden was ineffective for failing to properly argue for a reduced sentence. (Doc. 3 at 13-20.) Darden, according to Hensley, should have argued for a downward variance or departure, prepared evidence supporting a variance or departure, filed a sentencing memorandum, investigated and presented mitigating evidence, and argued that U.S.S.G. § 2G2.2 is the least empirically based of all guidelines and is not due deference.

The Court rejects Hensley's last argument -- that U.S.S.G. § 2G2.2 is not due deference.[5] A defendant's

---

[5] Hensley also suggests that this case falls outside of the "heartland" of U.S.S.G. § 2G2.2 cases. (Doc. 10 at 13.) As support, he cites to a Ninth Circuit case finding that where images had been downloaded automatically into a defendant's temporary internet cache file and he had not affirmatively downloaded files, arranged them, indexed them, or created a search mechanism, the case did not fall within the "heartland" of the guidelines section. (*Id.* (citing *United States v. Parish*, 308 F.3d 1025, 1030 (9th Cir. 2002).) This is clearly not such a case. Hensley purchased the files, which were "dumped" on his computer by the seller. While he may not have personally viewed every one of the files, he sought them out, paid for them, and exercised some level of control over them -- the unrebutted evidence of record shows that he hid the files in his work folders, they were not simply in his temporary internet cache. (Cr. doc. 20 at 35, 38; cr.

> argument that the district court erred in adhering to the Guidelines because of the inherent flaws in § 2G2.2 is unavailing. Defining and fixing penalties for federal crimes are Congressional, not judicial, functions. *United States v. Evans*, 333 U.S. 483, 486, 68 S.Ct. 634, 636, 92 L.Ed. 823 (1948). *See also Mistretta v. United States*, 488 U.S. 361, 377-78, 109 S.Ct. 647, 658, 102 L.Ed.2d 714 (1989) (noting that Congress has given the Sentencing Commission the discretion to determine the relative severity of federal crimes, assess the relative weight of the offender characteristics, and decide which types of crimes are to be considered similar for the purposes of sentencing). We decline to hold either that § 2G2.2 is flawed or that the district court abused its discretion by relying on a section of the Sentencing Guidelines. The district court was correct to rely on § 2G2.2 when sentencing.

*United States v. Clawson*, 303 F. App'x 861, 863 (11th Cir. 2008); *see also United States v. Rodriguez*, 338 F. App'x 840, 843 (11th Cir. 2009) ("We conclude from the record that the district court did not abuse its discretion in giving deference to U.S.S.G. § 2G2.2."). The Court also rejects Henlsey's remaining arguments. Darden in fact did argue for leniency (cr. doc. 21 at 20-24), as well as present evidence in mitigation from Hensley and his sons. (*Id.* at 14-20.) While he did not present further evidence in mitigation, including a potentially positive letter from Hensley's sex offender treatment class leader, Hensley has not offered any facts indicating what the mitigation evidence would have shown. Moreover, Darden did argue at

---

doc. 21 at 12.)

sentencing that Hensley had "been in counseling since the time he was released on pretrial," and had done very well in his classes and had attended all of his sessions. (*Id.* at 22.) Based upon the record and Hensley's failure to particularize what any additional witnesses or evidence would have said, the Court is persuaded that any additional evidence would have been merely cumulative. The sentencing judge, well aware of Hensley's former standing in the community, good reputation, rearing of two successful children, specialized skills, and lifetime of productivity, balanced Hensley's positive attributes against the long-term damage child pornography has on its victims, and found that there was no reason to depart from the guidelines. (*Id.* at 25-26.) Based upon the totality of the record, the Court is simply not persuaded that any additional effort on Darden's part to obtain experts or present other evidence in mitigation would have been reasonably likely to have affected Hensley's sentence. Hensley simply has not shown that he was prejudiced by Darden's performance.[6]

---

[6] Hensley also points to several other decisions where appellate courts affirmed a downward sentencing variance or departure as reasonable in a child pornography case. (Doc. 3 at 14-15.) While such determinations may have been reasonable, sentencing is necessarily highly discretionary. Here, the sentencing judge, after considering *United States v. Booker*, 543 U.S. 220 (2005), and the 18 U.S.C. § 3553(a) factors, determined that the sentencing guidelines range was appropriate. While other courts may have

For all of the reasons explained above, Hensley's § 2255 motion (doc. 2) should be **DENIED**. Moreover, applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  14th  day of April, 2010.

/s/ JP Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA

---

reached a different "reasonable" conclusion on similar facts, Hensley simply has not offered any reason to believe that his sentencing judge acted "unreasonably" or was inclined to alter the sentence based upon a stronger showing.